# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**SIMON LEE ROMINE**                                                                **PLAINTIFF**

V.                                    No. 4:20-CV-01106-ERE

**COMMISSIONER OF SOCIAL SECURITY**                                  **DEFENDANT**

## ORDER

Plaintiff, Simon Lee Romine, appeals the final decision of the Commissioner of the Social Security Administration denying his Title II application for disability insurance benefits and claims for supplemental security income benefits under Title XVI of the Social Security Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

## I. BACKGROUND

On June 21, 2018, Mr. Romine protectively filed for benefits due to post-traumatic PTSD, depression, a traumatic brain injury, a femur fracture, a sacral fracture, dissection of the thoracic aorta, kidney and liver lacerations, a pubic ramus fracture, fracture of spinous lumbar vertebrae, a fracture of the right metacarpal of the right hand, fractured ribs, a fractured patella, severe pain, nausea, and mood swings. *Tr. 245*. Many of the medical conditions are from a 2013 car wreck. *Tr. 49-51, 1211*.

Because Mr. Romine previously received benefits from December 5, 2013 to November 14, 2017, the Administrative Law Judge ("ALJ") considered disability only after November 15, 2017. *Tr. 11*. Mr. Romine's claims were denied initially and upon reconsideration. At Mr. Romine's request, an ALJ held a hearing on November 4, 2019, where Mr. Romine appeared with his lawyer. At the hearing, the ALJ heard testimony from Mr. Romine and a vocational expert ("VE"). *Tr. 35-72*. The ALJ issued a decision on February 25, 2020, finding that Mr. Romine was not disabled. *Tr. 8-31*. The Appeals Council denied Mr. Romine's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-5*.

Mr. Romine, who was thirty-four years old at the time of the hearing, has a high school diploma and a medical assisting certificate. *Tr. 15, 38*. He has past relevant work experience as a construction worker, insurance sales agent, and food delivery person. *Tr. 25, 38*.

## II. DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Mr. Romine had not engaged in substantial gainful activity since November 15, 2017 and he has the following severe impairments:

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g).

residuals of femur fracture, lumbar arthritis, chronic pain syndrome, and depression. *Tr. 14*. However, the ALJ found that Mr. Romine did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

According to the ALJ, Mr. Romine has the residual functional capacity ("RFC") to perform sedentary, indoor work and can occasionally perform posturals, such as stoop, crouch, bend, kneel, crawl, balance, and use of stairs. *Tr. 17*. He can perform work that is simple, routine, and repetitive with supervision that is simple, direct, and concrete. He requires an option to stand after sitting thirty minutes. However, the standing option would last no more than five minutes, would be performed within the immediate workplace area, and could not interfere with the work process. *Id*.

The VE testified that jobs available with these limitations included tube operator or table worker. *Tr. 67.* Accordingly, the ALJ determined that Mr. Romine could perform a significant number of other jobs existing in the national economy, and found he was not disabled.

## III. DISCUSSION

### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the

record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

    **B.**    **Mr. Romine's Arguments for Reversal**

        **1.**    **RFC Did Not Reflect Moderate Limitation in Adapting and Managing Oneself**

Mr. Romine asserts that the Commissioner's decision should be reversed because the ALJ noted that Mr. Romine had a moderate limitation in adapting and managing himself but did not include any such limitation in the RFC finding. *Doc. 14 at p. 14-15*. This was not required. *Hosch v. Colvin*, No. C15-2014-CJW, 2016 WL 1261229, at *5 (N.D. Iowa Mar. 30, 2016) ("The ALJ was not required to include specific, moderate limitations on concentration, persistence, or pace in his RFC assessment or hypothetical question to the Vocational Expert (VE), simply because he found plaintiff had these limitations in his 'paragraph B' criteria analysis

4

at Step Three."). Furthermore, "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." *Tr. 16*. *West-Viotay v. Saul*, 829 F. App'x 149, 150 (8th Cir. 2020) ("While the RFC findings did not specify work-related limitations based on some moderate functional-area limitations that the ALJ found under the 'paragraph B' criteria, the two findings serve distinct purposes at the separate steps of the sequential evaluation process.").

### 2. ALJ Relied on Evidence From Previous Period of Disability

Mr. Romine contends that, although the ALJ said he would consider Mr. Romine's disability commencing after November 15, 2017, he inappropriately considered evidence of disability from an earlier period. Notably, Mr. Romine cites to no case law to support his position. The ALJ acknowledged that some of the records reviewed "were rendered prior to the cessation date, but they provide some perspective of the claimant's injuries." *Tr. 19*. Mr. Romine argues that the ALJ "fails to explain how medical reports from 2013 to 2016 . . . provide any perspective" as to his condition from November 2017 to the time of the decision. *Doc. 14 at p. 18*. The ALJ specifically noted that "[a]ny discussion of medical or other evidence prior a previously adjudicated period is for the limited purpose of determining the effects of any chronic health problems on claimant's subsequent level of functioning and is

not intended to reopen the final determination of the Commission. *Tr. 11*. Clearly, the ALJ discussed previous treatment to provide full context of the significance of Mr. Romine's injuries. There is nothing wrong with giving a full history. In fact, Mr. Romine's own brief references medical records that pre-date the alleged disability period. *Doc. 14 at p. 18-20*. Ultimately, the ALJ listed and analyzed Mr. Romine's "physical impairments since November 15, 2017, the date following the most recent prior final determination of the Commissioner that the claimant was not under a disability . . . ." *Tr. 21*. This was entirely appropriate.

    **C.**    **Substantial Evidence Supports the ALJ's Decision**

After a thorough recitation of Mr. Romine's medical history, the ALJ found that Mr. Romine "may have some level of pain and/or limitation associated with residuals of femur fracture, lumbar arthritis" but it would not prevent him from performing sedentary work with the restrictions listed in the RFC. *Tr.25*. He noted that Mr. Romine's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." *Tr. 19*.

"When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage,

effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). An ALJ does not need to explicitly discuss each of the *Polaski* factors, and the ALJ can reject complaints which are inconsistent with the evidence as a whole. *Id*. A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

The Court finds that substantial evidence supports the ALJ's decision to discount Mr. Romine's complaints. In assessing Mr. Romine's credibility, the ALJ considered numerous facts from the record as a whole and noted several inconsistencies which support his credibility finding.

On October 10, 2017, Mr. Romine began seeing Dr. Vadim Petrov for pain management. *Tr. 1381*. He was prescribed hydrocodone and gabapentin to help with pain in his lower back and legs. *Tr. 1384*. During a second follow-up visit on December 12, 2017, Mr. Romine reported that a 50% reduction in pain for three weeks after he received a steroid injection for his lower back. *Tr. 1394*. At a January 9, 2018 appointment Mr. Romine reported a reduction in "pain over 60 percent and [the pain] has been manageable with medication(s) regimen." *Tr. 1400.* The next

7

month, Mr. Romine reported that a "bilateral lumbar medial branch block . . . helped pain temporarily over 70-80 percent for several hours." *Tr. 1406*.

Though it took some time, Mr. Romine and his physicians found a medication and treatment regimen that worked. "An impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). Between October 2018 and August 2019, the medical notes repeatedly state that Mr. Romine's pain was "manageable with current medications," there was "improvement with function and quality of life," and he was "able to perform activities of daily living with current regimen." *Tr. 1420, 1432, 1436, 1603, 1605, 1609, 1613, 1615, 1617*. Additionally, in July 2019, Mr. Romine asked to lower his trazodone dose and reported that the "pain in his back has lessened due to having screws removed from his hip." *Tr. 1653, 1667*. He also reported that post-surgery "he feels much better and can twist, turn, and dance like he's never done before." *Tr. 1665*. In August 2019 he reported that he still has "relief from previous procedures, and is not interested in other procedures at this time." *Tr. 1618*.

The ALJ also considered Mr. Romine's reported activities of daily living. Mr. Romine was able to "perform personal care (except needs help when in severe pain), care with his two children, help with house chores, help with laundry and dishes, watch television, prepare simple meals, drive a car, go out alone, shop in stores with his fiancé once a week for about an hour or more, pay bills, count change, use a

checkbook/money order, spend time with others at family events, and go to church." *Tr. 17-18*. Also, as mentioned above, Mr. Romine was "able to perform activities of daily living with current regimen." *Tr. 1432*, *1436, 1603, 1605, 1609, 1613, 1615, 1617*. These activities reduce Mr. Romine's credibility regarding the severity of his pain. *Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017) (driving, shopping, cooking, and doing laundry may be inconsistent with disabling pain); *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (affirming district court decision finding claimant's subjective complaints not fully credible where claimant engaged in "extensive daily activities").

"One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR–96–7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). Mr. Romine testified that he used marijuana but his doctor did not care. *Tr. 43*. However, as the ALJ pointed out at the hearing, the medical notes repeatedly suggest that Mr. Romine was advised to stop using marijuana. *Tr. 44, 1438, 1609, 1617*. Additionally, medical notes on two occasions indicated that Mr. Romine reported not using illicit drugs, but, again, he has admitted smoking marijuana for pain management. *Tr. 1633, 1666*. Mr. Romine's conflicting statements about drug use also support the ALJ's decision to discount Mr. Romine's subjective testimony.

9

The ALJ discussed Mr. Romine's mental health limitations. Though Mr. Romine saw a psychiatrist a few times, he ultimately sought treatment through his general practitioner. *Tr. 1578-1591, 1653*. Additionally, he unilaterally decided to stop taking the Lexapro he was prescribed by the psychiatrist and asked his general physician to lower his trazodone dosage. *Tr 1653*. Again, "[a]n impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

The ALJ applied the proper legal standards in evaluating Mr. Romine's subjective complaints and articulated several valid reasons for discounting his credibility. Accordingly, the Court should defer to those findings. Furthermore, the ALJ's final decision is supported by substantial evidence on the record as a whole.

## IV. CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision. There is no legal error.

Accordingly, Mr. Romine's appeal is DENIED and judgment will be entered for the Commissioner. The Clerk of Court is directed to close the case.

IT IS SO ORDERED this 4th day of November, 2021.

_____
UNITED STATES MAGISTRATE JUDGE